UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, AMERICAN FAMILY LIFE INSURANCE COMPANY, and AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Wisconsin mutual insurance companies,<br><br>        Plaintiffs,<br>vs.<br><br>JANET BEASLEY, an individual, and INSURANCE OUTLET, a Nevada sole-proprietorship,<br><br>        Defendants.<br><br>JANET BEASLEY, an individual, and INSURANCE OUTLET, a Nevada sole-proprietorship,<br><br>        Counter-Claimants,<br>vs.<br><br>AMERICAN FAMILY LIFE INSURANCE COMPANY, AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Wisconsin mutual insurance companies,<br><br>        Counter-Defendants. | Case No.: 2:10-cv-2090-GMN-RJJ<br><br>**ORDER** |

## **INTRODUCTION**

Before the Court is Plaintiffs/Counter-Defendants American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin's (hereinafter collectively "American Family") Motion to Strike (ECF

No. 13).  Defendant/Counter-Claimants Janet Beasley and Insurance Outlet (hereinafter collectively "Beasley") filed a Response (ECF No. 21).  American Family filed a Reply (ECF No. 24).

Also before the Court is American Family's Motion to Dismiss Counterclaims (ECF No. 14).  Beasley filed a Response to the Motion (ECF No. 22), as well as a Counter-Motion for Summary Judgment (ECF No. 23).  American Family filed a Reply to its Motion to Dismiss (ECF No. 25) and a Response to the Motion for Summary Judgment (ECF No. 30).  Beasley filed a Reply to the Motion for Summary Judgment (ECF No. 31).

## FACTS AND BACKGROUND

American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin are affiliated insurance companies that sell commercial and personal likes of insurance and securities. (Compl. ¶6, ECF No. 1.)  On July 1, 2007, American Family entered into an American Family Entity Agent Agreement with Herni Thompson Agency, Inc. (the "Agreement"). (*Id.* at ¶7; Agreement, Ex. A attached to Compl., ECF No. 1).  Prior to the Agreement, Herni S Tjong-Thompson ("Thompson") was an agent of American Family. (Compl. at ¶8).  Thompson is the major equity holder and principal and manager of Henri Thompson Agency, Inc. ("Thompson Agency"). (*Id.*).

Beasley was an employee of Thompson Agency until at least December 2008. (*Id.* at ¶9.) American Family alleges that Beasley, and others employed by or associated with the Thompson Agency, conspired to defraud and did defraud American Family by manipulating the timing of policy transactions to artificially inflate retention numbers with the aim of increasing quarterly commission bonuses paid by American Family. (*Id.* at ¶10.)  American Family alleges that as a result of the inflation and attempts to defraud, the Thompson Agency received commission bonuses that were much higher than what they should have actually received. (*Id.* at ¶¶11−16.)  It is alleged that Beasley benefited financially from the inflated bonuses. (*Id.*)

The Agreement provides that for one year following the termination of the agreement, the Agent nor any Equity Holder, officer, member or licensed sales representative of the Agent will induce or attempt to induce any policyholder to lapse, cancel, replace or surrender any insurance policy in force with American Family. (*Id.* at ¶19; Agreement at p. 10.)  The Agreement also provides that all policy records remain the property of American Family and shall be returned upon the termination of the agreement (Compl. at ¶20; Agreement at p. 5.)  The Agreement states that American Family's Customer Information is confidential, should only be used to perform services under the Agreement and should not be disclosed or made available except as necessary to provide services under the Agreement. (Compl. at ¶20; Agreement at pg. 7.)

In December 2008, American Family discovered that the employees were artificially inflating their numbers and terminated the Agreement. (Compl. at ¶22–23.)  American Family alleges that Beasley, and others, retained copies of customer information from American Family's database and customer files following the termination of their agency with American Family. (*Id.* at ¶25.)  American Family further alleges that Beasley began contacting American Family policyholders in an attempt to induce them to lapse, cancel, replace or surrender their American Family insurance policies. (*Id.* at ¶27.)  On February 17, 2009, Beasley obtained a business license for Insurance Outlet with the City of Henderson, Nevada, and listed herself as owner. (*Id.* at ¶29.)  American Family alleges that Beasley induced at least a dozen American Family policyholders to transfer their insurance business from American Family to Insurance Outlet from February through March 2009. (*Id.* at ¶ 32.)

American Family alleges that Beasley has misappropriated trade secrets, tortuously interfered with its contractual relations and business expectations, engaged in unfair competition under Nevada law, been unjustly enriched, engaged in a civil conspiracy and concert of action to commit the unlawful acts, as well as aided and abetted the Thompson Agency in breaching its duties with American Family. (Compl. at ¶¶47–83.)

Beasley filed nine counterclaims in conjunction with their Answer. (Errata to Answer ¶¶14–65, ECF No. 9.)  Beasley alleges that it is American Family who is improperly interfering with its business relationships and has breached its contractual duties.  In July 2009[1], American Family and Beasley entered in to a contractual agreement wherein American Family would provide insurance coverage for personal injury, advertising injury, and other business-related losses sustained by Beasley ("Insurance Agreement"). (*Id.* at ¶15; Insurance Agreement, Ex. A attached to Errata to Answer, ECF No. 9–1.)  The terms of the Insurance Agreement provided that American Family would defend and indemnify Beasley for losses such as the ones set forth in American Family's Complaint. (Answer at ¶15.)  Beasley argues that American Family must defend and indemnify her and Insurance Outlet in this suit because of the Insurance Agreement.

## DISCUSSION

**A.     Motion to Strike**

   **1.     Legal Standard**

Federal Rule of Civil Procedure 8(b)(1)(B) states that "[i]n responding to a pleading, a party must: admit or deny the allegations asserted against it by an opposing party."  "A denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2).  "A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." Fed. R. Civ. P. 8(b)(4).  An averment in a pleading that this not properly denied is deemed to be admitted. Fed. R. Civ. P. 8(b)(6).  Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

   **2.     Analysis**

American Family motions the Court to strike from Beasley's Answer a total of 38

---

[1] The Counterclaim says January 2009 but the Insurance Agreement attached to Beasley's Errata to Answer and Counterclaims has an effective date of July 7, 2009. (*See* Insurance Agreement, Ex. A attached to Errata to Answer, ECF No. 9–1.)

paragraphs where Beasley responded "deny the allegations contained [in 38 paragraphs] as they call for legal conclusions." (*See* Errata to Answer.)  American Family argues that many other courts have found that refusing to answer an allegation because it calls for legal conclusions is improper. *See Donnelly v. Frank Shirey Cadillac, Inc.*, No. 05 C 3520, 2005 WL 2445902, at *2 (N.D. Ill. Sept. 29, 2005) (Refusing to answer an allegation because it calls for legal conclusions "flies in the face of the established doctrine that legal conclusions are a proper part of federal pleading, to which Rule 8(b) also compels a response." (citing *Gracedale Sports and Entm't., Inc. v. Ticket Inlet, LLC*, No. 99 C 2781, 1999 WL 618991, at *1 (N.D. Ill. Aug. 9, 1999))) . *See also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827 (1989); *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir. 1995); *Northern Ind. Metals v. Iowa Express, Inc.*, 2:07-cv-414-PRC, 2008 WL 2756330, at *4 (N.D. Ind. July 10, 2008)(Responses that an allegation "is a legal conclusion" is "insufficient and contrary to the Federal Rules of Civil Procedure.").

Beasley responds that the answers are legitimate responses to American Family's "legal conclusions."  However, Beasley does not cite to any authority that allows a party to deny an allegation because it calls for a legal conclusion.  Instead, Beasley only calls into question one of the cases cited by American Family because the plaintiff in that case was a pro per plaintiff. *See Jackson*, 66 F.3d 151 (7th Cir. 1998).  Beasley also argues that the other two cases cited by American Family do not have any real bearing on this case but does not specifically state why.

The Court is persuaded by the cases cited by American Family and finds that it is proper to Strike the responses by Beasley.  Beasley will be given fourteen (14) days to file an Amended Answer; otherwise the Court will deem admitted all 38 paragraphs that Beasley failed to deny properly.

**B.     Motion to Dismiss**

American Family also moves to dismiss Beasley's counterclaims of breach of contract (count 1), breach of the covenant of good faith and fair dealing (count 2), breach of fiduciary duty

(count 3), tortious breach of the covenant of good faith and fair dealing (count 4), and declaratory relief (count 8).  These counts relate to whether or not American Family has a duty to defend Beasley under the Insurance Agreement.

### 1. Legal Standard

Nevada courts will give the language of an insurance policy "its plain and ordinary meaning 'from the viewpoint of one not trained in law.'" *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1157–58(Nev. 2004)(quoting *Farmers Ins. Group v. Stonik*, 867 P.2d 389, 391(Nev. 1994)).  The court "will not rewrite contract provisions that are otherwise unambiguous or increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." *Id.*

The duty to defend is a broad duty of the insurer to defend an insured that arises when there are facts alleged that give rise to the potential of liability under the policy. *See United Nat'l*, 99 P.3d at 1158.  "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured." *Id.*  However, "the duty to defend is not absolute" and "a potential for coverage only exists when there is arguable or possible coverage." *Id.* (citations omitted).  The court must compare the allegations of the complaint with the terms of the policy to determine if there is a duty to defend. *Id.*  The duty to indemnify, in contrast, only arises in the event of final placement of covered, non-excluded liability upon the insured through judgment or settlement. *Associated Aviation Underwriters, Inc. v. Vegas Jet, L.L.C.*, 106 F.Supp.2d 1051 (D.Nev. 2000).

### 2. Analysis

Beasley claims entitlement to coverage under the "personal and advertising" provisions of the Insurance Agreement.  The coverage is provided as follows:

/ / /

/ / /

A. Coverages

1. Business Liability.
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages ....

   b. This insurance applies:
   . . .

   (2) To "personal and advertising injury" caused by an offense arising out of your business, **but only if the offense was committed** in the "coverage territory" **during the policy period**.

(Insurance Agreement, at p. 22 of 35 of agreement.)

The wrongs alleged in the Complaint happened before the Insurance Agreement took effect on July 7, 2009. Specifically, the Complaint alleges that "Ms. Beasley induced at least a dozen American Family policyholders to transfer their insurance business from American Family to Insurance Outlet from February through March 2009. (Comp. at ¶32.) Thus, it is clear under the terms of the Insurance Agreement that American Family does not have a duty to defend against the policy manipulation claims because they occurred before the effective date of the Insurance Agreement.

Beasley argues that since the suit was not filed until November 30, 2010 it creates an issue of fact as to when the alleged acts actually occurred. Beasley also asserts that American Family must explain how the alleged activities ceased by July 8, 2009 when the Insurance Policy became effective and the claims that the Complaint contemplates ongoing injury.

The Court must look to the terms of the contract and the complaint to determine if there is a duty to defend. *United Nat'l*, 99 P.3d at 1158. Although the Complaint does contemplate ongoing injury, the alleged incidents that caused the injury are the stealing of the business records and soliciting American Family customers that happened before the date of the Insurance

Agreement.  Therefore, the Insurance Agreement does not cover the time period in question and American Family has no duty to defend.

In the alternative, the Court also finds Beasley's alleged activities do not fall under the definition of "advertising injury."  The Insurance Agreement defines "personal and advertising injury" as follows:

> [an] injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> . . .
> f.  The use of another's advertising idea in your "advertisement"; or
> g.  Infringing upon another's copyright, trade dress or slogan in your advertisement.

(Insurance Agreement, at p. 32 of 35 of agreement.)  The phrase "advertisement," as used in subsections (f) and (g), means:

> a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>
> a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and
> b.  Regarding web-sites only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

(Insurance Agreement, at p. 31 of 35 of agreement.)

Beasley argues that the alleged claims against her and Insurance Outlet directly implicate her advertising ideas and styles of business as the improper means that resulted in the "stealing" of American Family clients.  Beasley claims that since it used Thompson's telephone and fax number to do business with potential clients this amounts to an advertising injury.

Courts construing similar provisions of commercial general liability (CGL) insurance policies have distilled a three part test to determine if there is an advertising injury: (1) the suit must have alleged a cognizable advertising injury; (2) the infringing party must have engaged in

advertising activity; and (3) there must have been some causal connection between the advertising injury and the advertising activity. *See State Farm Fire & Cas. Co. v. Steinberg,* 393 F.3d 1226, 1231 (11th Cir. 2004)(setting forth the three-part test); *Travelers Indem. Co. v. Walker & Zanger, Inc.*, 221 F.Supp. 2d 1224, 1232 (S.D. Cal. 2002)(citing *Peerless Lighting Corp. v. American Motorists Ins. Co.*, 98 Cal. Rptr. 2d 753, 760–61(Cal. App. 1st Dist. 2000)); *see also Associated Aviation Underwriters*, 106 F.Supp. 2d at 1055.

Beasley's arguments fail under the first prong of the test. American Family's allegations do not give rise to an "advertising injury." The phrase "advertising idea" refers to an "advertising concept or plan for an advertising campaign." *EKCO Group, Inc.* v. *Travelers Indem. Co.*, 273 F.3d 409, 413 (1st Cir. N.H. 2001). It is an "idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 748 (3d Cir. 1999)(quoting *Atlantic Mut. Ins. Co.* v. *Badger Med Supply Co.*, 528 N.W.2d 486, 490 (Wis. Ct. App. 1995)). While a symbol, slogan, or method of advertising can be an advertising idea, courts have found that a confidential customer list is a trade secret not an advertising idea. *See Steinberg*, 393 F.3d at 1234.

The Ninth Circuit addressed the applicability of the "misappropriation of advertising ideas or style of doing business" clause in a CGL policy's advertising injury coverage in *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.*, 93 F.3d 578 (9th Cir. 1996)(applying California law). In *Sentex*, the court affirmed a district court's holding that the insurer had a duty to defend its insured under the "misappropriation of advertising ideas or style of doing business" clause where the underlying complaint alleged that the insured had induced a third party to breach a non-competition agreement with the underlying plaintiff company, to misappropriate its "trade secrets, including customer lists, marketing techniques, and other inside and confidential information" and, together with the insured, to solicit the underlying plaintiff's customers. *Id.* at 579–80. However the court stated that the misappropriation of a customer list alone would not

trigger coverage under the language of the policy. *Id.* at 581.

The Eleventh Circuit found no duty to defend on facts similar to this case in *Steinberg*. The underlying plaintiff sued the insured for stealing a confidential customer list and database, and using it to unfairly compete with the plaintiff. *Steinberg*, 393 F.3d at 1232–34. The insured sought coverage under a provision that applied to "misappropriation of advertising ideas or style of doing business." *Id* at 1228. The court ruled that the provision was inapplicable because use of a customer list is not an "advertising idea":

> [T]he alleged misappropriation of a confidential customer list cannot, under accepted principles of insurance contract construction, be held to fall within the policy language regarding misappropriation of . . . "advertising ideas" . . . . **A confidential customer list is a trade secret, not an idea about advertising** . . . . Without relevant, attendant allegations pertaining to advertising, no coverage under a "misappropriation of advertising ideas . . ." theory is available.

*Id* at 1234 (emphasis added).

While no published Nevada decision has addressed whether or not the misappropriation of a customer list qualifies as an "advertising ideas" this Court believes that Nevada would agree with the 11th Circuit.[2] Therefore, this court finds that the alleged act of misappropriation of customer lists and related causes of actions do not allege an "advertising injury." The first prong of the test is not satisfied and there is no duty to defend. "Likewise, these factors in turn negate any future duty to indemnify." *Associated Aviation Underwriters*, 106 F.Supp.2d at 1056.

Without a duty to defend, there can be no breach of contract as alleged by Beasley. Counts two, three, and four all relate to the contract at issue and contain allegations that American Family has a duty to defend or have not lived up to their contractual obligations. As the Court has found

---

[2] In the absence of state law on point, "th[e] court must predict how the Nevada Supreme Court would decide this issue 'using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Great Am. Ins. Co. v. N. Am. Specialty Ins. Co.,* 542 F. Supp. 2d 1203, 1211 (D. Nev. 2008) (quoting *Arizona Elec. Power Co-op v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)).

that there is no duty to defend, these causes of action must fail. Beasley's request for declaratory relief, however, is related to all of the counterclaims and therefore, it will not be dismissed.

### C. Motion for Summary Judgment

Beasley moves for summary judgment on the basis that American Family has breached the contract because it refuses to defend and indemnify Beasley in this suit. For the reasons stated above, the Court has determined that American Family does not have a duty to defend and indemnify. Accordingly, Beasley's motion is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that American Family's Motion to Strike (ECF No. 13) is **GRANTED**. Beasley shall file an Amended Answer by **February 21, 2012**. **Failure to do so will result in the allegations being construed as ADMISSIONS.**

**IT IS FURTHER ORDERED** that American Family's Motion to Dismiss (ECF No. 14) is **GRANTED in part and DENIED in part**. Beasley's First, Second, Third, and Fourth Causes of Action are **DISMISSED**.

**IT IS FURTHER ORDERED** that Beasley's Motion for Summary Judgment (ECF No. 23) is **DENIED**.

**DATED** this 6th day of February, 2012.

_____
Gloria M. Navarro
United States District Judge